IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| DIANNA YODER, | § | |
| CLINT WALDING, and | § | |
| KELLEY WILLIAMS, individually and | § | |
| on Behalf of Others Similarly Situated, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | CIVIL ACTION NO. 1:19-cv-00070 |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| FLORIDA FARM BUREAU, FLORIDA | § | |
| FARM BUREAU GROUP, FLORIDA | § | |
| FARM BUREAU FEDERATION, | § | |
| FLORIDA FARM BUREAU CASUALTY | § | |
| INSURANCE COMPANY, FLORIDA | § | |
| FARM BUREAU GENERAL | § | |
| INSURANCE COMPANY, SOUTHERN | § | |
| FARM BURUEA CASUALTY | § | |
| INSURANCE COMPANY, and | § | |
| SOUTHERN FARM BUREAU LIFE | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendants. | § | |

## COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.    This case implicates Farm Bureau's longstanding policy of misclassifying their employees as independent contractors. Defendants Florida Farm Bureau, Florida Farm Bureau Group, Florida Farm Bureau Federation, Florida Farm Bureau Casualty Insurance Company, Florida Farm Bureau General Insurance Company, Southern Farm Bureau Casualty Insurance Company, and Southern Farm Bureau Life Insurance Company (collectively, "Employers") required or permitted Plaintiffs Dianna Yoder, Clint Walding, and Kelley Williams—and other similarly situated employees—to work as insurance agents in excess of 40 hours per week but

refused to compensate them at one and one-half times their regular rate of pay.

2.  Plaintiffs and other similarly situated insurance agents were not paid any base salary. Instead, the Employers only paid them commissions, and Plaintiffs labored without any predetermined guaranteed minimum pay per week, and regardless of the number of hours worked. The Employers did not pay Plaintiffs or other similarly situated insurance agents an overtime premium for hours worked in excess of 40 in a week.

3.  The Employers' conduct violates the Fair Labor Standards Act ("FLSA"), which requires nonexempt employees to be compensated for their overtime work at a rate of one and one-half times their regular rate of pay. *See* 29 U.S.C. § 207(a).

4.  Plaintiffs bring a collective action to recover the unpaid wages owed to them and all other similarly situated insurance agents, current and former, of the Employers who worked for any of the Employers at any time during the three-year period before this Complaint was filed up to the present. These class members should be informed of the pendency of this action and apprised of their rights to join in the manner envisioned by *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) and its progeny.

## SUBJECT-MATTER JURISDICTION AND VENUE

5.  This Court has jurisdiction over the subject matter of this action under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

6.  Venue is proper in the Northern District of Florida because a substantial portion of the events forming the basis of this suit occurred in this District.

MH00833818

7.    Substantially related cases involving some of the same Employers under identical payment practices are pending in the Western District of Texas and Northern District of Mississippi.[1] These cases involve both agents (like Plaintiffs) and Agency Managers, who were the managers of employees like Plaintiffs and the other similarly situated insurance agents in this case. In each the plaintiffs all allege they were misclassified as exempt independent contractors.

## PARTIES AND PERSONAL JURISDICTION

8.    Plaintiff Dianne Yoder is an individual residing in Brooksville, Hernando County, Florida. Her written consent form is filed contemporaneously with this Complaint.

9.    Plaintiff Clint Walding is an individual residing in Trenton, Gilchrist County, Florida. His written consent form is filed contemporaneously with this Complaint.

10.    Plaintiff Kelley Williams is an individual residing in Lake City, Columbia County, Florida. Her written consent form is filed contemporaneously with this Complaint.

11.    According to Florida Farm Bureau's "Company Info" webpage, it is a "wholly owned subsidiary of the Southern Farm Bureau Casualty Insurance Group" and consists of two Florida property and casualty insurance companies: Florida Farm Bureau Casualty Insurance Company and Florida Farm Bureau General Insurance Company. According to the Florida Farm Bureau's "Farm Bureau Insurance" webpage, "eligible county Farm Bureau members in Florida" can have their property and casualty insurance policies "written through Florida Farm Bureau Casualty Insurance Company, Florida Farm Bureau General Insurance Company and several other insurance companies." Furthermore, the same webpage states that eligible Farm Bureau

---

[1] *English, et al. v. Texas Farm Bureau, et al.*, Cause No. 6:17-CV-00323 (W.D. Tex. filed Nov. 17, 2017); *Ferguson v. Texas Farm Bureau, et al.*, Cause No. 6:17-CV-00111 (W.D. Tex. filed Apr. 20, 2017); *Britt, et al. v. Mississippi Farm Bureau, et al.*, Cause No. 1:18-CV-00038 (N.D. Miss. filed Feb. 28, 2018).

members can have their life and annuity products written "through Southern Farm Bureau Life Insurance Company." Florida Farm Bureau utilizes letterhead listing these companies under the umbrella of "Florida Farm Bureau," "Florida Farm Bureau Insurance," or "Florida Farm Bureau Insurance Companies" or some variation thereof.

12.    Florida Farm Bureau Group's "Company History" webpage further represents that its "headquarters building is . . . located east of I-75 at Exit 382 (Old 74), the southernmost exit for Gainesville" and that it "ranks as one of the market leaders in private passenger auto and homeowners insurance business in the state of Florida."

13.    Defendant Florida Farm Bureau Group ("FFB Group") is a Florida entity which provides auto, homeowner, dwelling fire, farm, and business owner insurance policies, maintains a presence and corporate address in Gainesville, Alachua County, Florida 32608, and consists of two companies: Florida Farm Bureau Casualty Insurance Company and Florida Farm Bureau General Insurance Company.

14.    Defendant Florida Farm Bureau Federation ("FFB Federation") is a Florida entity which provides property and casualty insurance policies and maintains a presence and corporate address in Gainesville, Alachua County, Florida 32608.

15.    Defendant Florida Farm Bureau Casualty Insurance Company ("FFB Casualty") is a Florida insurance company which provides property and casualty insurance policies and maintains a presence and corporate address in Gainesville, Alachua County, Florida 32608.

16.    Defendant Florida Farm Bureau General Insurance Company ("FFB General") is a Florida insurance company which provides property and casualty insurance policies and maintains a presence and corporate address in Gainesville, Alachua County, Florida 32608.

17.    Defendant Southern Farm Bureau Casualty Insurance Company ("SFB Casualty") is a Mississippi insurance company which provides property and casualty insurance policies and maintains a presence and corporate address in Tallahassee, Leon County, Florida 32399.

18.    Defendant Southern Farm Bureau Life Insurance Company ("SFB Life") is a Mississippi insurance company, which provides life insurance policies and maintains a presence and corporate address in Tallahassee, Leon County, Florida 32399.

## EMPLOYERS FORM A SINGLE ENTERPRISE

19.    The Employers form a single enterprise under 29 U.S.C. § 203(r) because they perform related activities for a common business purpose.

20.    Each Employer engages in activities relating to selling and servicing insurance policies under the Florida Farm Bureau or Southern Farm Bureau aegis.

21.    Florida Farm Bureau utilizes letterhead listing (a) Florida Farm Bureau Group; (b) Florida Farm Bureau Casualty Insurance Company; (c) Florida Farm Bureau General Insurance Company; (d) Southern Farm Bureau Casualty Insurance Company; and (e) Southern Farm Bureau Life Insurance Company under the umbrella of "Florida Farm Bureau," "Florida Farm Bureau Insurance," or "Florida Farm Bureau Insurance Companies" or a variation thereof. These companies are engaged in the selling and servicing of insurance policies in Florida.

22.    All of the Employers except for SFB Casualty and SFB Life operate out of 5700 SW 34th Street, Gainesville, Florida 32608. SFB Casualty and SFB Life operate out of 200 E. Gaines St., Tallahassee, Florida 32399. The Employers keep records relating to each company and the entire enterprise at each location respectively.

23.     The Employers operate subject to common management and control. According to Florida Department of State records and Bloomberg.com's Company Profiles, Employers share several officers and directors, including, but not limited to, John L. Hoblick, President of FFB Group, Director of FFB Group, FFB Casualty, FFB General, and SFB Life and Vice Chairman of SFB Casualty; Randy Veach, President and Chairman of SFB Life and Director of FFB Casualty, FFB General, and SFB Casualty; David Michael McCormick, Director of FFB Casualty, FFB General, SFB Life, and SFB Casualty; and Ronald Anderson, Director of FFB Casualty, FFB General, and SFB Life and Chairman of SFB Casualty.

24.     The Employers have a unified operation, with each of the entities working together to offer different kinds of insurance in the Florida market under a single Florida Farm Bureau identity. In conjunction with each other, the Defendants had the right to (1) hire and fire, (2) supervise and schedule, (3) set terms and conditions of employment for, and (4) control the conduct of Plaintiffs' and other similarly situated misclassified insurance agents.

25.     The Employers engaged in complementary businesses and were to a significant degree operationally interdependent. Agents worked for all Employers, simultaneously selling insurance lines from all the companies. Advertising was under the joint Florida Farm Bureau logo, as were business cards issued to the agents. Agents had @ffbic.com email addresses. Each of the Employers cooperated to offer different lines of insurance under a single brand. This fact is established by letters sent by sales managers to Plaintiffs and similarly situated misclassified insurance agents, all under the Florida Farm Bureau letterhead, representing FFB Group, FFB Federation, FFB Casualty, FFB General, SFB Casualty, and SFB Life as a joint enterprise in terminating Plaintiffs' employment and/or accepting their resignation.

26.    The preceding factual assertions establish a clear identity of interest between Employers FFB Group, FFB Federation, FFB Casualty, FFB General, SFB Casualty, and SFB Life such that they are an integrated enterprise and joint employers of Plaintiffs and the similarly situated misclassified insurance agents.

## EMPLOYERS ARE JOINT EMPLOYERS OF PLAINTIFFS

27.    Employers are joint employers of Plaintiffs and other misclassified agents.

28.    Employers, formally or as a matter of practice, jointly determine, share, or allocate the ability to direct, control, or supervise Plaintiffs and other misclassified agents, by both direct or indirect means. For example, Plaintiffs and other misclassified agents were supervised by District Sales Managers who were responsible for managing the sales program for all product lines sold by the Employers. District or State Sales Managers communicated corporate initiatives, procedures, and guidelines to Plaintiffs and other misclassified agents. Likewise, those same managers and supervisors, who oversaw Plaintiffs and the other misclassified agents regarding policies issued by Florida Farm Bureau companies, supervised them for life policies issued by Southern Farm Bureau Life Insurance Company.

29.    Employers, formally or as a matter of practice, jointly determine, share, or allocate the power to—directly or indirectly—hire or fire Plaintiffs and other misclassified agents or modify the terms or conditions of the worker's employment. For example, Plaintiffs and other misclassified agents were subject to employment-related agreements with each of the Employers whereby Employers misclassified them as independent contractors. These agreements required Plaintiffs and other misclassified agents to follow guidelines, instructions, or rules

contained within the companies' rate books, compliance manuals, and guidelines, which were subject to change at Employers' sole discretion. These same agreements reserve Employers' right to terminate Plaintiffs and other misclassified agents at will.

30.    The relationships between all of the Employers is permanent and longstanding.

31.    Employers utilize letterhead listing (a) Florida Farm Bureau Group; (b) Florida Farm Bureau Casualty Insurance Company; (c) Florida Farm Bureau General Insurance Company; (d) Southern Farm Bureau Life Insurance Company; and (e) Southern Farm Bureau Life Insurance Company entities under the umbrella of the "Florida Farm Bureau."

32.    Employers operate subject to common management and control. According to Florida Department of State records and Bloomberg.com's Company Profiles, Employers share several officers and directors, including, but not limited to, John L. Hoblick, President and Vice Chairman; Randy Veach, President, Chairman, and Director; David Michael McCormick, Director; and Ronald Anderson, Director and Chairman.

33.    The day-to-day experience of Plaintiffs and other misclassified agents was that "Florida Farm Bureau" (as listed on their letterhead) was their employer, and the distinctions between the various entities under the FFB umbrella was fairly meaningless to the Plaintiffs.  For example, supervisors and managers would be described as working for "Florida Farm Bureau" and managed Plaintiffs concerning all the insurance lines sold, including all Florida Farm Bureau Group lines as well as life insurance sold by Southern Farm Bureau Life Insurance Company.

34.    Plaintiffs and other misclassified agents received pay from the Florida Farm Bureau entities and Southern Farm Bureau Life Insurance Company. Facilities, computers, and other office supplies were supplied by Employers and used for all work done by Plaintiffs—

including selling policies issued by the Florida Farm Bureau companies and Southern Farm Bureau Life Insurance Company.

## SPECIFIC EMPLOYMENT ALLEGATIONS

35.     As described in this pleading, Plaintiffs were continually supervised, managed, and employed by "Florida Farm Bureau," an enterprise comprised of several different companies or divisions. As to Plaintiffs' employment, there was no distinction between Employers. Employers all comprised "Florida Farm Bureau," were Plaintiffs' employer, and all had control over the scheduling, pay, continued employment, and job duties of the Plaintiffs and similarly misclassified agents.

36.     Plaintiffs sold insurance on behalf of "Florida Farm Bureau," which is comprised of Florida Farm Bureau Group, Florida Farm Bureau Federation, Florida Farm Bureau Casualty Insurance Company, Florida Farm Bureau General Insurance Company, Southern Farm Bureau Casualty Insurance Company, and Southern Farm Bureau Life Insurance Company.

37.     Plaintiffs' managers and supervisors were employees of "Florida Farm Bureau," Florida Farm Bureau Group, Florida Farm Bureau Federation, Florida Farm Bureau Casualty Insurance Company, Florida Farm Bureau General Insurance Company, Southern Farm Bureau Casualty Insurance Company, and Southern Farm Bureau Life Insurance Company.

38.     Plaintiffs' managers and supervisors had the authority to hire and fire agents like Plaintiffs on behalf of "Florida Farm Bureau," Florida Farm Bureau Group, Florida Farm Bureau Federation, Florida Farm Bureau Casualty Insurance Company, Florida Farm Bureau General Insurance Company, Southern Farm Bureau Casualty Insurance Company, and Southern Farm

Bureau Life Insurance Company. In fact, supervisors and managers did hire and fire agents like Plaintiffs on behalf of "Florida Farm Bureau," Florida Farm Bureau Group, Florida Farm Bureau Federation, Florida Farm Bureau Casualty Insurance Company, Florida Farm Bureau General Insurance Company, Southern Farm Bureau Casualty Insurance Company, and Southern Farm Bureau Life Insurance Company. Indeed, these companies' supervisors and managers hired Plaintiffs.

39.     The managers and supervisors had the authority to supervise Plaintiffs and other agents, to control schedules and conditions of employment on behalf of "Florida Farm Bureau," Florida Farm Bureau Group, Florida Farm Bureau Federation, Florida Farm Bureau Casualty Insurance Company, Florida Farm Bureau General Insurance Company, Southern Farm Bureau Casualty Insurance Company, and Southern Farm Bureau Life Insurance Company. In fact, supervisors and managers did control the schedules of agents, and the conditions of employment on behalf of "Florida Farm Bureau," Florida Farm Bureau Group, Florida Farm Bureau Federation, Florida Farm Bureau Casualty Insurance Company, Florida Farm Bureau General Insurance Company, Southern Farm Bureau Casualty Insurance Company, and Southern Farm Bureau Life Insurance Company.

40.     Plaintiffs and other misclassified agents were subject to employment-related agreements between themselves and Florida Farm Bureau Group, Florida Farm Bureau Federation, Florida Farm Bureau Casualty Insurance Company, Florida Farm Bureau General Insurance Company, Southern Farm Bureau Casualty Insurance Company, and Southern Farm Bureau Life Insurance Company individually.

41.    These agreements provide that Plaintiffs are subject to the guidelines, instructions, or rules contained within the companies' rate books, compliance manuals, and guidelines, which were subject to change at the sole discretion of the companies.

42.    These same agreements reserve the right to the companies to terminate the Plaintiffs and other misclassified agents at will.

43.    These agreements reserve control over the rate and method of payment to the companies. The companies can modify their obligations of payment by adjusting rate schedules and the like at any time.

44.    "Florida Farm Bureau," Florida Farm Bureau Group, Florida Farm Bureau Federation, Florida Farm Bureau Casualty Insurance Company, Florida Farm Bureau General Insurance Company, Southern Farm Bureau Casualty Insurance Company, and Southern Farm Bureau Life Insurance Company maintain employment records relating to Plaintiffs and other similarly situated agents.

## FLSA COVERAGE

45.    At all material times, Employers were employers within the meaning of the FLSA. *See* 29 U.S.C. § 203(d).

46.    Employers controlled the nature, pay structure, and employment relationship of Plaintiffs.

47.    Employers had, at all times relevant to this lawsuit, the authority to hire and fire insurance agents, the authority to direct and supervise the work of insurance agents, the authority to sign on the companies' checking accounts, including payroll accounts, and the authority to

make decisions regarding insurance agents' compensation and capital expenditures. Additionally, Employers were responsible for the day-to-day affairs of the business. Employers were responsible for determining whether they complied with the FLSA.

48.    As such, pursuant to 29 U.S.C. § 203(d), Employers acted directly or indirectly in the interest of Plaintiffs' employment as their employer, which makes Employers liable under the FLSA.

49.    Furthermore, at all material times, Employers have been an enterprise in commerce or in the production of goods for commerce within the meaning of § 203(s)(1) of the FLSA because they have had employees engaged in commerce.  *See* 29 U.S.C. § 203(s)(1).

50.    Employers engaged in related activities performed through a unified operation and common control for a common business purpose. *See* 29 U.S.C. § 203(r)(1).

51.    Employers have had, and continue to have, an annual gross business volume in excess of $500,000. *See* 29 U.S.C. § 203(s)(1)(A)(ii).

52.    At all material times, Employers were individual employees who engaged in commerce or in the production of goods for commerce as required by *See* 29 U.S.C. §§ 206–207.

## FACTS

53.    Plaintiffs and similarly situated employees have all been victimized by Employers' common policy and plan to violate their rights under the FLSA by denying them proper overtime compensation.

54.    Employers operate a business enterprise selling insurance-related services and products, including auto, home/property, farm/ranch, life, and health insurance.

55.    Plaintiffs' primary job duties were selling Employers' insurance services and

MH00833818                                12

products.

56.    The services provided by Plaintiffs and the other similarly situated insurance agents to Employers were integrated into Employers' business operation of selling insurance products, which is inconsistent with a bona fide independent-contractor classification.

57.    Plaintiff Dianna Yoder worked for Employers from February 1988 through December 2017; Plaintiff Clint Walding worked for Employers from 2006 until June 2016; and Plaintiff Kelley Williams worked for Employers from 1994 to March 2017. When hired, Plaintiffs and Employers anticipated that these employment relationships would be long term and last indefinitely.

58.    Plaintiffs sold policies exclusively for Employers and were expressly prohibited from selling insurance for other companies while working for Employers, even if Employers did not offer a competing product.

59.    Employers issued business cards to Plaintiffs, with Employers' name and logo, which identified each Plaintiff as Employers' "insurance agent."

60.    Plaintiffs were closely and directly supervised by other employees of Employers.

61.    Employers provided Plaintiffs with email addresses and encouraged or required Plaintiffs to use a signature that identified Plaintiffs as Employers' agents.

62.    Employers determined what insurance policies Plaintiffs and similarly situated agents could sell. Employers decided what policies they would offer and underwrite.

63.    Employers alone set the price of insurance policies sold by Plaintiffs and the similarly situated insurance agents.

64.    Employers controlled the substantive content of all advertising done on behalf of Florida Farm Bureau. Plaintiffs who wished to advertise had to have their advertisements approved by Employers.

65.    Employers solely controlled the placement of policies, whose commissions represented the entirety of the Plaintiffs' and similarly situated agents' incomes. Employers could remove a policy from one agent and give it to another, thereby assigning the commission from the first agent and giving it to the second.

66.    Employers required Plaintiffs and similarly situated insurance agents to attend meetings and training sessions.

67.    Employers' investment in infrastructure designed to underwrite, administer, and pay claims of the insurance products sold by Plaintiffs far exceeded any investment by the Plaintiffs.

68.    Plaintiff Yoder has worked for Defendants for over twenty-eight years, Plaintiff Walding worked for Employers for ten years, and Plaintiff Williams has worked for Employers for over twenty-three years. Plaintiffs are aware of other similarly situated employees who worked for Employers for years and even decades.

69.    Plaintiffs and other misclassified agents routinely worked over 40 hours in a week. Typically, Plaintiffs and similarly situated agents were required to sell insurance out of Employers' branch locations during business hours for roughly 40 hours a week. Plaintiffs and similarly situated agents customarily and regularly sold insurance to customers from these fixed locations either in person or over the phone. Therefore, Plaintiffs and similarly situated agents were not customarily and regularly engaged in selling insurance while away from Employers'

14

branch locations, and in fact performed all essential sales work from Florida Farm Bureau offices.

70.    Outside of branch business hours, Plaintiffs and similarly situated agents were required to meet with current policyholders for hours to review their policies and ensure that the policyholders' desired coverage levels were up to date. FFB required its agents to do so to prevent insured from later filing lawsuits on the basis that FFB had misrepresented coverage. Also, Plaintiffs and similarly situated agents were required to perform other work outside of branch business hours, like photographing the properties of new policyholders while their policies were in underwriting. Most insurers actually hire third parties to handle property photographs because it is a non-sales function. But FFB often required its agents to photograph properties because they were paid commissions, and therefore could perform the function without any expense to FFB. In any event, Plaintiffs and similarly situated agents were required to use branch locations as their primary headquarters for the sale of insurance and all of the essential components of insurance sales took place from within their office.

71.    Plaintiffs have first-hand personal knowledge of Employers' pay violations.

72.    Plaintiffs were nonexempt employees of Employers.

73.    The insurance agents who work for Employers are compensated exclusively through commissions and are not paid any base salary. They do not have a predetermined, guaranteed minimum pay per week.

74.    Employers failed to make payroll tax or other withholdings from the commissions paid to Plaintiffs and other similarly situated insurance agents.

75.    Employers unlawfully classified their insurance agents as independent

contractors.  But, at all times, the insurance agents were employees of Employers as that term is defined by the FLSA and relevant case law.

76.    Employers controlled the hiring, firing, assignment or reassignment, and commission rates of the Plaintiffs and similarly situated insurance agents.

77.    Employers closely monitored and effectively set the work schedule for the Plaintiffs and similarly situated insurance agents.

78.    Employers disciplined insurance agents for not following company rules.

79.    Employers tracked the time and days the insurance agents worked, as is common for typical employer–employee relationships.

80.    In addition, Employers instructed the insurance agents about when, where, and how the insurance agents were to perform their work.

81.    The following facts, among others described above, further demonstrate the insurance agents' status as employees:

  a) Employers had the sole right to hire and fire the insurance agents;

  b) Employers and Plaintiffs contemplated that Plaintiffs' employment would not be temporary but rather long and indefinite in length;

  c) In fact, the tenure of each of the named Plaintiffs was over a year, and one was twenty-three years;

  d) Employers provided the physical facilities and requirements of the work, including front-office staff, office equipment, computers, and the buildings in which Plaintiffs and similarly situated agents were employed;

  e) Employers, not Plaintiffs or other misclassified agents, determined the

location of the branch offices at which agents worked;

f)   Plaintiffs and other misclassified agents could not, through their own managerial skill, have a substantial impact on the profit and loss earned by them;

g)   Employers, not Plaintiffs or other misclassified agents, set prices for the insurance products and services sold by the agents;

h)   Employers, not Plaintiffs or other misclassified agents, controlled the advertising and marketing of the insurance services and products sold by the agents;

i)   Customers of the Employers made payments directly to Employers for purchased services and products, not to Plaintiffs or other agents;

j)   Employers, not Plaintiffs or other misclassified agents, owned "book of business" of policyholders;

k)   Employers set Plaintiffs and other agents a specific schedule, requiring daily work within set hours at branch locations as well as additional work outside of the normal office hours;

l)   Plaintiffs and other agents were expected to stay on the Employers' premises during the normal work day. Plaintiffs were so strongly discouraged from leaving that if they did, they received calls and e-mails not only questioning them about where they were and what they were doing but also insisting that they return to work;

m) Employers closely monitored, micromanaged, and effectively exercised

control over the scheduling of Plaintiffs and other agents, both in terms of hours worked, and in terms of vacation and other planned time off;

n) Employers contractually prohibited Plaintiffs from selling insurance for other companies during their employment, thereby making Plaintiffs the "captive agents" of the Employers;

o) Employers, not Plaintiffs or other misclassified agents, provided the main capital investments in the business;

p) Employers provided Plaintiffs and insurance agents with company email addresses and business cards;

q) Plaintiffs and similarly situated insurance agents were supervised by other employees of Employers; and

r) Plaintiffs and similarly situated insurance agents were subject to noncompete agreements that could bar them from selling insurance within 50 miles of their stationed Florida Farm Bureau branch for two years following their termination of employment for Employers with certain exceptions.

82. Employers misclassified Plaintiffs and other similarly situated insurance agents as independent contractors to avoid their obligations to pay Plaintiffs and similarly situated insurance agents pursuant to the FLSA.

83. Plaintiffs and the similarly situated insurance agents are not exempt from the overtime and minimum wage requirements under the FLSA.

84.     Although Plaintiffs were required to and did in fact frequently work more than 40 hours per workweek, they were not compensated at the FLSA mandated time-and-a-half rate for hours in excess of 40 per workweek.

## VIOLATION OF 29 U.S.C. § 207

85.     Plaintiffs incorporate all allegations contained in this pleading.

86.     Employers' practice of failing to pay Plaintiffs time-and-a-half rate for hours in excess of 40 per workweek violates the FLSA. *See* 29 U.S.C. § 207.

87.     None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate not less than one and one-half times the regular rate at which its employees are employed are applicable to the Employers or Plaintiffs.

## VIOLATION OF 29 U.S.C § 211(c)

88.     Plaintiffs incorporate all allegations contained in this pleading.

89.     Employers failed to keep adequate records of Plaintiffs' work hours and pay in violation of section 211(c) of the FLSA. *See* 29 U.S.C. § 211(c).

90.     Federal law mandates that an employer is required to keep for three years all payroll records and other records containing, among other things, the following information:

a.     The time of day and day of week on which the employees' work week begins;

b.     The regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the FLSA;

c.    An explanation of the basis of pay by indicating the monetary amount paid on a per hour, per day, per week, or other basis;

d.    The amount and nature of each payment which, pursuant to section 7(e) of the FLSA, is excluded from the "regular rate";

e.    The hours worked each workday and total hours worked each workweek;

f.    The total daily or weekly straight time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation;

g.    The total premium for overtime hours. This amount excludes the straight-time earnings for overtime hours recorded under this section;

h.    The total additions to or deductions from wages paid each pay period including employee purchase orders or wage assignments;

i.    The dates, amounts, and nature of the items which make up the total additions and deductions;

j.    The total wages paid each pay period; and

k.    The date of payment and the pay period covered by payment.

*See* 29 C.F.R. §§ 516.2, 516.5.

91.    Employers have not complied with federal law and have failed to maintain such records with respect to Plaintiffs. Because Employers' records are inaccurate and/or inadequate, Plaintiffs can meet their burden under the FLSA by proving that they, in fact, performed work for which they were improperly compensated, and producing sufficient evidence to show the

MH00833818

amount and extent of the work "as a matter of a just and reasonable inference." *See, e.g.*, *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

## WILLFULLNESS

92.    Employers' method of paying Plaintiffs in violation of the FLSA was willful and was not based on a good faith and reasonable belief that their conduct complied with the FLSA.

93.    Employers were aware of the FLSA's requirement that all non-exempt employees be paid time-and-a-half of their regular rate of pay for all hours worked in excess of 40 hours in a seven-day week.

94.    Employers were aware of the specific job duties of the insurance agents and were aware that those duties did not fit within any exemption to the FLSA's requirement for overtime pay.

95.    Employers knew that the position of insurance agent as the job was intended and was performed by the Plaintiffs and other similar agents was consistent with an employment relationship under the FLSA and that it would be improper to classify the agents as independent contractors.

96.    Employers knew or showed reckless disregard for the proper classification of the Plaintiffs and other similar agents when they classified them as exempt independent contractors.

97.    Employers willfully misclassified Plaintiffs' positions as exempt.

## COLLECTIVE-ACTION ALLEGATIONS

98.    Plaintiffs adopt by reference all of the facts set forth in this pleading.

99.    Other employees have been victimized by Employers' violations of the FLSA as identified above and throughout this pleading.

100.    These employees are similarly situated to Plaintiffs because, during the relevant time period, they held similar positions, were compensated in a similar manner, and were denied overtime wages at one and one-half times their regular rates for hours worked over 40 in a workweek.

101.    Employers' policy or practice of failing to pay overtime compensation is a generally applicable policy or practice and does not depend on the personal circumstances of the putative class members.

102.    Since Plaintiffs' experiences are typical of the experiences of the putative class members, collective-action treatment is appropriate.

103.    All employees of Employers, regardless of their rates of pay, who were paid at a rate of less than one and one-half times the regular rates at which they were employed for the hours that they worked over 40 in a workweek are similarly situated. Although the issue of damages may be individual in character, there is no detraction from the common nucleus of liability facts. The Class is therefore properly defined as:

> All current or former insurance agents who were classified by Defendants as independent contractors and who were not paid overtime for the hours they worked in excess of 40 hours per week and who worked at any time for any of the Defendants between April 12, 2016 and the present.

104.    Employers are liable to Plaintiffs and the putative class members for the difference between what Employers actually paid them and what Employers were legally obligated to pay them.

105.    Because Employers knew or showed a reckless disregard for whether their pay practices violated the FLSA, Defendants owe Plaintiffs and the other putative class members their unpaid overtime wages for at least the last three years.

106.    Employers are liable to Plaintiffs and the other putative class members in an amount equal to their unpaid overtime wages as liquidated damages.

107.    Employers are liable to Plaintiffs and the other putative class members for their reasonable attorneys' fees and costs.

108.    Plaintiffs have retained counsel who are well versed in FLSA collective-action litigation and who are prepared to litigate this matter vigorously on behalf of them and all other putative class members.

## DAMAGES AND ATTORNEY'S FEES SOUGHT

109.    Plaintiffs are entitled to recover their unpaid overtime compensation.

110.    Plaintiffs are also entitled to an amount equal to all of their unpaid wages as liquidated damages. *See* 29 U.S.C. § 216(b).

111.    Plaintiffs are entitled to recover their attorney's fees and costs as required by the FLSA. *See* 29 U.S.C. § 216(b).

## JURY DEMAND

112.    Plaintiffs hereby demand trial by jury.

## PRAYER

113.    For these reasons, Plaintiffs respectfully request that judgment be entered in their favor awarding the following relief:

MH00833818

a)    an order allowing this action to proceed as a collective action under 29 U.S.C. § 216(b);

b)    a judgment awarding Plaintiffs and the other putative class members overtime compensation for all hours worked over 40 in a workweek at the applicable time-and-a-half rate;

c)    an equal amount of all owed wages as liquidated damages as allowed under the FLSA;

d)    all costs and attorney's fees incurred prosecuting these claims;

e)    incentive awards for any class representatives; and

f)    such other relief to which Plaintiffs may be entitled, at law or in equity.

Date: April 17, 2019

Respectfully submitted,

**MCDOWELL HETHERINGTON LLP**

By:    _/s/ Jason A. Richardson_
Jason A. Richardson
Fla. Bar No. 56902
Jason.Richardson@mhllp.com
Avi Moshenberg*
Texas Bar No. 24083532
avi.moshenberg@mhllp.com
Nick Lawson*
Texas Bar No. 24083367
nick.lawson@mhllp.com
Emil Sadykhov*
Texas Bar No. 24110316
emil.sadykhov@mhllp.com
1001 Fannin Street, Suite 2700
Houston, Texas 77002
Telephone:  (713) 337-5580
Facsimile:  (713) 337-8850

**ATTORNEYS FOR PLAINTIFFS**

*Applications for Admission *Pro Hac Vice* to be filed