### IN THE UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF FLORIDA
### GAINESVILLE DIVISION

**DIANNA YODER, CLINT WALDING,**
**and KELLEY WILLIAMS, individually**
**and on behalf of others similarly situated,**

      **Plaintiffs,**

**v.**                                   **Case No. 1:19-cv-70-AW-GRJ**

**FLORIDA FARM BUREAU, FLORIDA**
**FARM BUREAU GROUP, FLORIDA**
**FARM BUREAU FEDERATION,**
**FLORIDA FARM BUREAU**
**CASUALTY INSURANCE COMPANY,**
**FLORIDA FARM BUREAU GENERAL**
**INSURANCE COMPANY, SOUTHERN**
**FARM BUREAU CASUALTY**
**INSURANCE COMPANY, and**
**SOUTHERN FARM BUREAU LIFE**
**INSURANCE COMPANY,**

      **Defendants.**
_____/

### ORDER DENYING CONDITIONAL CLASS CERTIFICATION

This is a collective action under the Fair Labor Standards Act. Plaintiffs

Dianna Yoder, Clint Walding, and Kelley Williams sold insurance for the Farm

Bureau defendants.[1] ECF No. 1 (Compl.). They sued, saying they were misclassified

---

[1] Plaintiffs sued Florida Farm Bureau, Florida Farm Bureau Group, Florida
Farm Bureau Federation, Florida Farm Bureau Casualty Insurance Company,
Florida Farm Bureau General Insurance Company, Southern Farm Bureau Casualty
Insurance Company, and Southern Farm Bureau Life Insurance Company. Compl.
¶ 1. They argue that defendants form a single enterprise or are Plaintiffs' joint

as independent contractors, worked more than forty hours a week, and are owed

overtime wages. Compl. ¶¶ 1-4, 53-87; *see also* 29 U.S.C. §§ 207, 211(c). They now

seek conditional certification under 29 U.S.C. § 216(b). ECF No. 47. They ask for

conditional certification of this class:

> All former and current independent contractors of Florida Farm Bureau,
> Florida Farm Bureau Group, Florida Farm Bureau Casualty Insurance
> Company, Florida Farm Bureau General Insurance Company, Southern
> Farm Bureau Casualty Insurance Company, and Southern Farm Bureau
> Life Insurance Company, from April 17, 2016 to present that have
> worked in the position of insurance agent in the State of Florida.

ECF No. 47 at 8.[2] Farm Bureau opposes this. ECF No. 54.

# I. THE STANDARD

The FLSA authorizes collective actions against employers who violate certain

FLSA provisions, including § 207's overtime requirements. *See* 29 U.S.C. § 216(b);

*Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1258 (11th Cir. 2008). Unlike

traditional class-action suits under rule 23, an FLSA collective action requires class

members to opt into the suit. *See Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208,

---

employers. Compl. ¶¶ 19-34. How the Farm Bureau defendants relate to one another
is not now an issue.

Plaintiffs have also dismissed their claims against Florida Farm Bureau
Federation. ECF No. 25. And, of the seven named entities (including Florida Farm
Bureau Federation), four entities have made arguments on this motion: Florida Farm
Bureau Casualty Insurance Company, Florida Farm Bureau General Insurance
Company, Southern Farm Bureau Life Insurance Company, and Southern Farm
Bureau Casualty Insurance Company. *See* ECF Nos. 54; 56; 63; 64; 73.

[2] Pinpoint citations reflect the PDF pagination in CM/ECF.

1216 (11th Cir. 2001); *see also Cameron-Grant v. Maxim Healthcare Servs., Inc.*, 347 F.3d 1240, 1243 n.2 (11th Cir. 2003) (citing *Hipp*, 252 F.3d at 1208).

District courts have broad discretion in deciding whether to certify a class. *Hipp*, 252 F.3d at 1219. The Eleventh Circuit has suggested a two-step process. *See Mickles v. Country Club Inc.*, 887 F.3d 1270, 1276-77 (11th Cir. 2018) (citing *Hipp*, 252 F.3d at 1208). Under this approach, courts conditionally certify a class and notify potential class members but then, as the case nears trial, reconsider the certification. *Cameron-Grant*, 347 F.3d at 1243 n.2 (citing *Hipp*, 252 F.3d at 1218).

At the first step—the "notice stage"—the court decides whether other employees should get notice. *Id.* (citing *Hipp*, 252 F.3d at 1218). Here, a plaintiff must show "a 'reasonable basis' for his claim that there are other similarly situated employees." *Morgan*, 551 F.3d at 1260-61 (citations omitted). Courts generally apply a "fairly lenient standard" to determine whether "the plaintiffs are truly similarly situated." *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007). Plaintiffs may meet this burden "by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which 'successfully engage defendants' affidavits to the contrary." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1097 (11th Cir. 1996); *see also Morgan*, 551 F.3d at 1261 (11th Cir. 2008). If the court grants conditional certification, "putative class members are

given notice and the opportunity to 'opt-in.'" *Cameron-Grant,* 347 F.3d at 1243 n.2 (quoting *Hipp*, 252 F.3d at 1218).

A motion for decertification generally triggers the second stage. *Id.* (citing *Hipp*, 252 F.3d at 1218). In this phase, the court benefits from a more developed record, and "the plaintiff bears a heavier burden." *Morgan*, 551 F.3d at 1261 (citing *Anderson*, 488 F.3d at 953); *see also Cameron-Grant*, 347 F.3d at 1243 n.2 (citing *Hipp*, 252 F.3d at 1218).

## II. ANALYSIS

Plaintiffs ask me to start with step one, apply a "fairly lenient" standard, and conditionally certify the class. *See* ECF No. 47 at 12-14. Farm Bureau suggests otherwise. It acknowledges the Eleventh Circuit's suggested two-step approach, but it argues for more exacting review because our record is already developed—and the reason for the lenient first step is to allow record development. ECF No. 54 at 14 (citing *Thedford v. Drive In of Evansville, Inc.*, No. 2:14-CV-0390-SLB, 2014 WL 5520954, at *2 (N.D. Ala. Oct. 31, 2014)). Regardless, Farm Bureau argues, I should deny certification under any standard because those in the proposed class will have a diverse range of experiences. In other words, Farm Bureau contends, Plaintiffs have not provided a reasonable basis to conclude their claims can be collectively resolved. ECF No. 54 at 6-13, 17-18.

I will begin with step one. The key inquiry here is whether there is a similarly situated group of employees. *See Morgan*, 551 F.3d at 1259. Neither the FLSA nor binding caselaw has precisely defined "similarly," but the Eleventh Circuit has said the question is "not whether their positions are identical." *Id.* at 1259-60 (citing *Grayson*, 79 F.3d at 1096). And it has explained that a court "should satisfy itself" that there are employees who (1) are "similarly situated" as to their job requirements and pay provisions and (2) "desire to 'opt-in.'" *Dybach v. State of Fla. Dep't of Corr.*, 942 F.2d 1562, 1567-68 (11th Cir. 1991); *see also Morgan*, 551 F.3d at 1259. But it has also recognized that the similarities required for "a collective action under § 216(b) must extend 'beyond the mere facts of job duties and pay provisions.'" *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007) (quoting *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1314 (M.D. Ala. 2002)). "Otherwise," it held, "it is doubtful that § 216(b) would further the interests of judicial economy, and it would undoubtedly present a ready opportunity for abuse." *Id.* (quoting *White*, 204 F. Supp. 2d at 1314).

## A. The Evidence

Plaintiffs argue they are similarly situated as to their job requirements and pay provisions, ECF No. 47 at 14-15, and they have submitted nearly identical declarations detailing their common experiences and duties. ECF Nos. 47-1 (Yoder Decl.); 47-2 (Walding Decl.); 47-3 (Williams Decl.); 47-4 (Davis Decl.); 47-5 (Butts

Decl.). They say Farm Bureau pays agents commissions and uniformly classifies them as contractors. *See* Yoder Decl. ¶¶ 3, 6. They note that agents have the same primary duties: to service policyholders and sell insurance products; that these duties are set out in contracts, manuals, and guides; and that agents perform these duties similarly by, for example, speaking with customers about their needs, researching eligibility, collecting customers' personal information, helping customers complete applications, generating quotes, and signing people up for their products. Yoder Decl. ¶¶ 8-10. Plus, Plaintiffs can sell only Farm Bureau products and are not allowed to subcontract their duties. Yoder Decl. ¶ 10. Plaintiffs argue too that "virtually identical" contracts establish agent work terms and duties—providing, for example, that agents must adhere to company rate-books, guidelines, and compliance manuals; and report all claims and applications to Farm Bureau, in accordance with its guidelines. Yoder Decl. ¶ 5. The contract also contains a noncompete provision. Yoder Decl. ¶ 5.

Plaintiffs also say agents' schedules are similar, as agents are required to sell Farm Bureau products at Farm Bureau office locations for approximately forty hours a week, meet with policyholders, and do off-hours work like inspecting and photographing policyholder properties. Yoder Decl. ¶ 11. Finally, Plaintiffs note that Farm Bureau provides Plaintiffs with training, supplies, and physical facilities (including front-office staff and computers). Yoder Decl. ¶¶ 11-12. Plaintiffs'

evidence also shows agents are managed "in the same way," including measuring agent performance and providing additional training to agents who fail to meet their "quotas." Yoder Decl. ¶ 13.

Farm Bureau provided competing declarations from other agents. *See* ECF Nos. 55-11 (Hetrick Decl.); 55-12 (Greene Decl.); 55-13 (Palhegyi Decl.); 55-14 (Timmons Decl.); 55-15 (Gonzalez Decl.); 55-16 (Helms Decl.); 55-17 (Tracy Decl.). These agents would fall into the proposed class definition, but according to their declarations, they had different experiences. Farm Bureau has also filed declarations from managers, some of whom previously worked as Farm Bureau agents, ECF Nos. 55-1 (Lentz Decl.); 55-2 (Blair Decl.); 55-3 (Higginbotham Decl.); 55-4 (Cothron Decl.); 55-5 (Mikell Decl.); 55-6 (Heard Decl.); 55-7 (Warren Decl,); 55-8 (McNeill Decl.); 55-9 (Booker Decl.); 55-10 (Gicalone Decl.), who explain that each agent's Farm Bureau experience is unique.

One agent, Joseph Hetrick of Escambia County, explains he recently incorporated and is planning to hire a customer service representative. He says that he only has to be in the office on "quote days" and prefers to do his business at clients' homes. Hetrick Decl. ¶¶ 4, 6, 10-11. Kevin Greene, a Suwannee County agent, says he views himself as a business owner, controls his own schedule, and enjoys the freedom to work as much or as little as he wants. He also plans to hire a customer service representative. Greene Decl. ¶¶ 4-5.

7

Raymond Palhegyi, a former agent who recently became the Broward County agency manager, operates his own corporation: Raymond Palhegyi, Inc. He says that as a Farm Bureau agent, he had freedom to set his schedule and "enjoyed the luxury of having no one looking over my shoulder." He analogizes the work to running a franchise: "[a]gents are given the keys to their own small businesses, and it's up to them to make it work." Palhegyi Decl. ¶¶ 2, 3, 7. Ray Timmons, a Dade County agent, explains that agents need to spend time outside of the office to succeed. He also recently incorporated. Timmons Decl. ¶¶ 6, 11.

Robert Gonzelez, a Broward County agent, reports that his company—Robert Gonzalez Insurance Agency, Inc.—employs a receptionist and leases two customer service representatives from his agency manager, Mr. Palhegyi. He purchases or rents his own office supplies including phones, furniture, copiers, printers, and computer monitors. And he leases his computers and IT-related products from Farm Bureau. Because of market restrictions in Broward County, he uses third-party brokerage companies to write policies when he is unable to sell a Farm Bureau product. Gonzalez Decl. ¶¶ 6, 7, 15. Richard Helms, a Sumter County agent, reports that he enjoys flexibility with his schedule and business—deciding when and how he wants to do his job. And he decides what expenses to incur and what types of advertising to use. Helms Decl. ¶¶ 3-5. Finally, Robert Tracey, a Hernando County

8

agent, describes his work as entirely self-monitored, seeing himself "as the captain of [his] own ship and in control of [his] destiny." Tracey Decl. ¶ 4.

### B. Obstacles to a Similarly Situated Finding

If all the declarations are true, different Farm Bureau agents have different day-to-day experiences, different approaches, and different expectations. The question is what to do with this conclusion.

Plaintiffs argue that I should not consider Farm Bureau's declarations at all—that I should not be resolving contradictory evidence and making credibility determinations at the notice stage. ECF No. 60-1 at 8. I agree I should not be deciding which declarations (if any) are credible. But neither can I ignore what Farm Bureau has submitted. The Eleventh Circuit has said, after all, that step-one plaintiffs must "successfully engage defendants' [contrary] affidavits." *See Hipp*, 252 F.3d at 1219 (citing *Grayson*, 79 F.3d at 1097); *see also Jones v. RS & H, Inc*., 775 F. App'x 978, 983 (11th Cir. 2019) ("The plaintiffs may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." (citation and quotation marks omitted)). Yet Plaintiffs have not really engaged with Farm Bureau's declarations.

Alternatively, Plaintiffs argued at the hearing that even if agents had different experiences, they weren't different in any meaningful way: That whether some

people left the office or worked from home, their claims would still all be the same, meaning they would still be similarly situated. But the issues and defenses applicable to the various declarants (and thus various class members) will differ because of their different experiences. I therefore conclude that Plaintiffs have not shown a reasonable basis to conclude that those in their proposed class—a statewide class—are similarly situated.

There are at least two significant areas that will involve individualized determinations: application of the economic realities test and application of the "outside sales" exemption. I have also considered the statewide aspects of the proposed class.

As a preliminary matter, Plaintiffs argue that claim elements and defenses should not be considered here—that they are irrelevant at the notice stage. Plaintiffs rely principally on district court cases from Mississippi and Texas. ECF No. 60-1 at 6-7. But they also cite *English v. Texas Farm Bureau Business Corporation*, which acknowledges a split in application of the economic realities test at the notice stage—at least among district courts in the Fifth Circuit. No. 6:17-CV-00323, 2019 WL 2112275, at *8 (W.D. Tex. Mar. 29, 2019).

District courts in the Eleventh Circuit regularly consider at the notice stage whether it is practical to adjudicate claims class-wide, and this includes evaluating the economic realities test. *See, e.g.*, *Kiley v. MedFirst Consulting Healthcare*

*Staffing, LLC*, 297 F. Supp. 3d 1260, 1266 (N.D. Ala. 2018) (granting conditional certification after considering whether the economic realities test could be applied class wide); *Herrera v. Mattress Firm, Inc.*, No. 17-22048-CIV, 2017 WL 4270619, at *9 (S.D. Fla. Sept. 26, 2017) ("Plaintiffs have not met their burden to show members of the proposed class are similarly situated, as they have not shown . . . that the economic realities test can be applied on a class-wide basis."); *Peña v. Handy Wash, Inc.*, No. 14-20352-CIV, 2014 WL 12531537, at *8 (S.D. Fla. July 3, 2014) (explaining the economic realities "factors are also relevant to assessing whether Plaintiff and the class she seeks to represent are similarly situated" and granting conditional certification as "it appear[ed] the majority of the economic realities factors can be assessed collectively"); *Demauro v. Limo, Inc.*, No. 8:10-CV-413-T-33AEP, 2011 WL 9191, at *4 (M.D. Fla. Jan. 3, 2011) ("[E]ach individual who may seek to join this case will be examined separately in order to determine whether such individual is an employee or an independent contractor. This necessarily individualized assessment eviscerates all notions of judicial economy that would otherwise be served by conditional class certification.").

And this makes sense. The purpose of the collective action is to resolve many claims at once—promoting efficiency for parties and the court. *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Morgan*, 551 F.3d at 1264-65. So while I should not (and cannot) resolve the merits here, I must consider whether

11

Plaintiffs have provided a reasonable basis to conclude the class is similarly situated such that the claims can be adjudicated collectively. *See Grayson*, 79 F.3d at 1097 (11th Cir. 1996) ("The plaintiffs bear the burden of demonstrating a 'reasonable basis' for their claim of class-wide discrimination." (citation omitted)).

*1.  Economic Realities Test*

The FLSA's protections extend to employees, not to independent contractors. *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013). Courts use the economic realities test to determine which one a plaintiff is, *id.* (citing *Bartels v. Birmingham*, 332 U.S. 126, 130 (1947)), and they use several factors:

> (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
>
> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
>
> (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
>
> (4) whether the service rendered requires a special skill;
>
> (5) the degree of permanency and duration of the working relationship;
>
> (6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Id.* at 1312. "No one of these considerations can become the final determinant, nor can the collective answers to all of the inquiries produce a resolution which submerges consideration of the dominant factor—economic dependence." *Id.* (quoting *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1311-12 (5th Cir. 1976)).

Farm Bureau's declarations largely implicate two of the six factors: the degree of control and the alleged employees' investment in equipment and employment of other workers. For example, while the Plaintiffs describe required in-office work Monday through Friday, Farm Bureau's witnesses say they can come and go as they please.[3] Agents also describe different experiences in how they are instructed and how they perform their duties.[4] And agents claim to experience varying levels of manager supervision and control.[5] Finally, agents describe different levels of

---

[3] *Compare* Yoder Decl. ¶ 7 ("Defendants' expectation is that Agents be in their offices Monday–Friday for the full workday. . . ."), *with* Hetrick Decl. ¶ 4 ("The only time I need to be in the office is for my assigned 'quote' day."), Greene Decl. ¶ 4 ("I have control over my schedule, and the freedom to determine when I work and how many hours I work . . . . I have the flexibility to come and go as I want."), Tracy Decl. ¶ 4 ("I can work whenever I want and as much or as little as I want."), Palhegyi Decl. ¶ 3 ("I never had anyone pressure me to be in the office at certain times"), Timmons Decl.  ¶ 5 ("I come and go from the Dade County office as I please . . . ."), Helms Decl. ¶ 3 ("Agents don't have office procedures. We do our own thing."), *and* Gonzalez Decl. ¶ 9 ("I have set up my office so that it can function without me. No one requires me to be at my office on any certain day.").

[4] *Compare* Yoder Decl. ¶ 9 ("Virtually every facet of our duties is set out in contracts, manuals, and guides that Agents are required to follow."), *with* Timmons Decl. ¶ 8 ("Every agent has his or her own way of selling insurance."), Tracy Decl. ¶ 4 ("No one tells me what to do and how to sell insurance. How I go about doing my job is entirely up to me."), *and* Gonzalez Decl. ¶ 4 ("No one tells me that how to run my insurance business . . . . I have developed my own way to sell insurance, service my clients, and grow my business, which works for me.").

[5] *Compare* Yoder Decl. ¶ 13 ("[M]anagers closely supervise Agents' work . . . . Managers have substantial control over Agents' work activities and schedules."), *with* Tracy Decl. ¶ 4 ("My work is entirely self-monitored; no one else monitors my work but me."), Helms Decl. ¶ 3 ("I am not micromanaged by my Agency Manager, and I do what I want to do."), Timmons Decl. ¶ 5 ("I do not have

reliance on the Farm Bureau defendants for physical facilities, equipment, and support staff.[6]

The Eleventh Circuit has said that although all six factors matter, the "overarching focus of the inquiry is economic dependence." *Scantland*, 721 F.3d at 1312. And "in considering economic dependence, the court focuses on whether an individual is 'in business for himself' or is 'dependent upon finding employment in the business of others.'" *Id*.; *see also id.* ("We view the subsidiary facts relevant to each factor through the lens of 'economic dependence' and whether they are more analogous to the "usual path" of an employee or an independent contractor."). Plaintiffs have not shown that the class it proposes is similarly situated such that it is amenable to collective resolution under the economic realities test.

---

to ask permission from anyone to take a vacation or to take time off."), *and* Gonzalez Decl. ¶ 9 ("I make my own schedule. I take time off to go fishing, as well as to travel. I do not ask anyone, including my Agency Manager, for permission to take time off.").

[6] *Compare* Yoder Decl. ¶ 11 ("Defendants provide the physical-facilities support—including front-office staff, office equipment, computers, and the buildings—in which Agents execute their job responsibilities."), *with* Palhegyi Decl. ¶ 6 ("All of the office expenses and any rent for the four offices are covered by me and/or the Broward County agents."), *and* Gonzalez Decl. ¶¶ 5-6 ("I am an employee of my Company. The Company also employs my receptionist, and is responsible for paying her compensation and health insurance. . . . [T]here are two Customer Service Representatives who work in my office. I lease these employees from my Agency Manager, Raymond Palhegyi.").

14

### 2. *Outside Sales Exemption*

The FLSA exempts "outside salesmen" from its overtime requirements. *See* 29 U.S.C. § 213(a)(1); *see also Gregory v. First Title of Am., Inc.*, 555 F.3d 1300, 1302 (11th Cir. 2009); *Reyes v. Goya Foods, Inc.*, 549 F. App'x 876, 877 (11th Cir. 2013). "The term 'outside salesmen' is defined as an employee '[w]hose primary duty is . . . making sales . . . and . . . [w]ho is customarily and regularly engaged away from the employer's place . . . of business in performing such primary duty.'" *Reyes,* 549 F. App'x at 877 (alterations in original) (quoting 29 C.F.R. § 541.500(a)); *see also Gregory*, 555 F.3d at 1302.

> To qualify for exemption . . ., an employee's "primary duty" must be the performance of exempt work. The term "primary duty" means the principal, main, major or most important duty that the employee performs. Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole. Factors to consider when determining the primary duty of an employee include, but are not limited to, the relative importance of the exempt duties as compared with other types of duties; the amount of time spent performing exempt work; the employee's relative freedom from direct supervision; and the relationship between the employee's salary and the wages paid to other employees for the kind of nonexempt work performed by the employee.

*Gregory*, 555 F.3d at 1302-03 (quoting 29 C.F.R. § 541.700). The regulations, as Farm Bureau argues, further provide that promotional work can be exempt as well, depending on the circumstances. *Id*. at 1303 ("'Promotional work that is actually performed incidental to and in conjunction with an employee's own outside sales or solicitations is exempt work' whereas 'promotional work that is incidental to sales

made, or to be made, by someone else is not exempt outside sales work.' 29 C.F.R. § 541.503(a).").

For at least two of the "primary duty" factors—the amount of time spent performing exempt work and the employee's relative freedom from direct supervision—we will need individualized consideration.[7]

### 3. Statewide Certification

Finally, even if some subset of agents is similarly situated, Plaintiffs have not shown that those in the statewide class they propose are. Florida has three Farm Bureau regional districts and ninety-four offices—operated by forty-two agency

---

[7] Plaintiffs' experience—of being tethered to their desks under close manager supervision, Yoder Decl. ¶ 7 ("Defendants' expectation is that Agents be in their offices Monday–Friday for the full workday, unless they are conducting business errands . . . ."), ¶ 11 ("Agents are primarily required to sell insurance from branch locations, during ordinary business hours for roughly 40 hours a week."), ¶ 13 ("Based upon my experience, managers closely supervise Agents' work . . . . Managers have substantial control over Agents' work activities and schedules. And managers routinely evaluate the Agents' performance.")—differs from the Farm Bureau declarants' experience. The Farm Bureau declarants describe regular out-of-the-office meetings and minimal supervision. *See* Timmons Decl. ¶ 6 ("I would estimate that 70% of my sales are made at customers' homes or businesses, and 30% are made in the office. I spend at least five hours a week driving around Miami-Dade County meeting with customers, getting signatures on insurance applications and paperwork, picking up checks, and photographing properties."); Hetrick Decl. ¶ 6 ("Seventy-five percent of my appointments (for both property and casualty and life insurance sales) are at clients' homes."); Tracy Decl. ¶ 5 ("Some days I set aside for appointments; other days I may plan to take photos and will come in later to the office. On other days, I may spend more time in the office . . . ."). To be sure, Yoder and the Plaintiffs acknowledge that they do perform some work outside the office. Yoder Decl. ¶ 11 ("Agents must also perform other work beyond branch business hours, like photographing the properties of property policyholders.").

managers. Lentz Decl. ¶¶ 13-14; ECF No. 54 at 6. Plaintiffs (and the opt-ins) are all from Farm Bureau's "District 2." Lentz Decl. ¶ 14. Plaintiffs seek a class definition that covers the entire state of Florida, but its evidence appears limited to a few neighboring counties in central Florida—in a single Farm Bureau regional "district." *See* Lentz Decl. ¶ 14. While Plaintiffs indicate that agents' job requirements are the same, Farm Bureau argues that there are "significant variations" in how Florida Farm Bureau agencies operate across the state. ECF No. 54 at 27-28. In "District 1," for example, "the counties on the coastline in the panhandle that are located in flood zones have special insurance needs and restrictions where [] agents are able to write insurance with brokerage companies to service the customers' needs." McNeill Decl. ¶ 4. In other more rural counties district agents "write more property and casualty insurance." McNeill Decl. ¶ 4.

In "District 3," most of the counties are coastal and "tend to be more densely populated than rural counties located in the middle part of the state and have less walk-in business than . . . a rural county." Booker Decl. ¶ 7. Notably, Farm Bureau agents in coastal counties must account for hurricanes, which, in places like Broward and Miami-Dade counties, present unique challenges and cause reliance on third-party brokerage agencies and carriers to write customer policies.[8]

---

[8] *See* Timmons Decl. ¶ 9 ("It can be frustrating in coastal counties, like Miami-Dade County, to sell insurance due to high premium rates, and underwriting

And perhaps some of the differences Farm Bureau highlights flow from those regional anomalies. To the extent Plaintiffs' declarations respond to Farm Bureau's claims of geographic diversity, their allegations of statewide, uniform treatment are based on unspecific "observation and discussion" with other unidentified Farm Bureau agents. *See* Yoder Decl. ¶¶ 4, 5, 9, 10, 13, 14. This is not enough. *See Grayson*, 79 F.3d at 1095. Therefore, Plaintiffs have not sufficiently engaged with Farm Bureau's declarations to establish a "reasonable basis" for their claim of statewide FLSA violations. *Cf. Jones*, 775 F. App'x at 983 (finding no abuse of discretion when court concluded plaintiffs had not shown a "reasonable basis" to support nationwide conditional class certification where the defendant supplied evidence that one official made allegedly discriminatory decisions for a single office and the plaintiffs "offered no allegations or evidence to the contrary.").

---

limitations and caps. When Florida Farm Bureau cannot underwrite coverage, I write insurance for my customers through several brokerage companies. I would estimate that 60% of my book of business is written on Florida Farm Bureau (or Southern Farm Bureau Life) paper, while 40% is written through brokerage companies such as Hull & Company, SIU and GeoVera, Global Marine, Progressive, and Citizens."); Gonzalez Decl. ¶ 15 ("In Broward County . . . there are insurance market restrictions on the types of policies I can write in the county, particularly with homeowner's insurance. If l am unable to sell a Farm Bureau product, I have the ability to see whether I can use a third-party brokerage company to write the policy. Approximately 60% of my book of business is Farm Bureau products, while 40% of my book of business is written through brokerage.").

**C. Desire to Opt In**

"[P]laintiffs have the burden of demonstrating a reasonable basis for crediting their assertions that aggrieved individuals exist[] in the broad class that they proposed." *Haynes v. Singer Co.*, 696 F.2d 884, 887 (11th Cir. 1983); *see also Morgan*, 551 F.3d at 1260. And that they desire to opt in. *See Dybach*, 942 F.2d at 1568.

Plaintiffs say that the five former agents who are already pursuing this suit demonstrate that there is interest. ECF No. 47 at 20. They argue that based on Plaintiffs' and the two pre-notice opt-in plaintiffs' declarations, it is "reasonable to assume" that other similarly situated agents have experienced FLSA violations and would like to opt in. ECF No. 47 at 20. It is true that district courts in this circuit credit pre-notice opt-ins as establishing interest. *See, e.g.*, *Campbell v. Pincher's Beach Bar Grill Inc.*, No. 215CV695FTM99MRM, 2016 WL 3626219, at *5 (M.D. Fla. July 7, 2016) ("[N]o firm line has been drawn regarding the number of opt-ins necessary, or magic language required, to convince the court that additional putative plaintiffs will join or desire to join the action."); *Teahl v. The Lazy Flamingo, Inc.*, No. 2:13-CV-833-FTM-38CM, 2015 WL 179367, at *6 (M.D. Fla. Jan. 14, 2015) (finding two opt ins and a declaration sufficient to establish employee interest). But even here, Plaintiffs have only shown interest from agents in District 2. This is an additional basis to deny the motion.

### III. Conclusion

The motion (ECF No. 47) is DENIED without prejudice. Plaintiffs have not met their burden of showing that the class they propose includes similarly situated employees or that agents outside District 2 desire to opt in.

Farm Bureau's motion to strike or modify (ECF No. 56) is DENIED as moot.

The Clerk will set a telephonic status conference for the first week of April or as soon thereafter as counsel is available.

SO ORDERED on March 19, 2020.

s/ *Allen Winsor*_____
United States District Judge